Thomas F. Hadley, DDS, PLLC Plaintiff Appellee be Lance Herschel Harrison Jr. Defendant Appellant Oral argument not to exceed 15 minutes per side. Mr. Lefkowitz for the appellant. You may proceed. Thank you. May it please the court. Steve Lefkowitz on behalf of the appellant Lance Harrison. May I remove my mask? Thank you. It's much easier to breathe. What we have here is summary judgment on the three counts of 523A2A, A4 and A6. And we submit that Dr. Harrison, who is also a dentist, cannot be tried on that at summary judgment without an absolute finding of an evidentiary hearing. And let me walk back and I'll take each one of the statutes in reverse order. Let's talk about 523A6. And there was a finding, and I'm relying on market graphics versus Berge. When I stood in this room and argued the Berge case before the Sixth Circuit, Judge Redler, who was sitting in the same seat as Judge Stout, asked me the question, can you have willful without malicious, or are they included? And my answer in that argument was, it's like the commutative property of mathematics. You can have malicious infers willfulness, but you cannot have willful without malicious. And then you have to also have malicious. So you can't have one without the other. And that went up assert denied by the Supreme Court. And in our cert briefs, we argued that there are two separate elements. There are two separate distinct elements. While the appellate in that particular case, or the petitioner for certiorari, argued there was a unitary standard. And that standard was followed by the Third and the Seventh Circuit. In Berge, the Sixth Circuit has made it abundantly clear that you have to prove both. So what we have here was a finding by the lower court of maliciousness without even hearing the explanation or testimony. Your client had an opportunity to provide an explanation, and in fact summary judgment provides that opportunity. Did he do so? I think he did in his response. But my opinion was that his response explained, we answered the questions, we responded to the disputed questions of fact. And I think those responses were strong enough to rebut the finding of maliciousness. So how so? Your client, in his response, he filed an affidavit on his behalf that said, I adopt what's in the filings, my filings in response. There wasn't a single citation, I don't believe, to any record item in the response to the statement of material facts submitted by Dr. Hadley. And again, I say that you cannot make a finding of, and none of those findings you can infer maliciousness without an evidentiary hearing. And I think that's the important factor here, that maliciousness cannot be decided on paper pleadings. They've got to be decided on live testimony. Are you saying that maliciousness in this case, there is a reason, there is something that Dr. Harrison would offer to counteract what otherwise might be an inference of maliciousness from the record itself? Is that what you're saying? Yes, ma'am. That he would be allowed to offer an excuse? Yes, ma'am. But he had that opportunity, didn't he? And I disagree. I think all he has to do is just put forth a bare statement. Because maliciousness, as the Sixth Circuit decided in Bergey, required more. You just cannot take that. You have to literally, you cannot take his intent from simply bare allegations. You have to hear his testimony. And his testimony could have been in the affidavits. And I hear what Your Honor is saying. That I think he needed to come, he had the opportunity and should be decided at an evidentiary hearing. And I think that's my reading of what the Sixth Circuit intended in Bergey, was that maliciousness cannot be inferred by those simple bare allegations. And that's my read of the Bergey decision. That you have to have an evidentiary hearing. Because you can never get to someone's intent. So are you saying that in an A6 situation, unless the debtor admits maliciousness, there can never be summary judgment on A6?  Because I think we've established a central standard for maliciousness. And I think that is where the intent of the Sixth Circuit is. I think that was the intent of the Supreme Court when they denied certiorari. That you have to affirmatively do that. That is consistent with this Court's decision in Markowitz. That's consistent with this Court's decision, interpretation of Geiger versus Kowalski. So I think that is an absolute finding. Let's talk about A4 if you would. Okay. The question on A4 is, can you embezzle from yourself? And I think, or commit larceny from yourself. The bankruptcy court, the lower court, Judge Walker, made a finding that you could. I say that's impossible. And I relied on the Stilwell case in my brief that it's not possible for you to steal from yourself. How was Dr. Harrison stealing from himself? That's the question. No, no. What is your assertion that the record reflects that he had legal right? Yes, ma'am. He was the owner of the property. What about the agreed order? The agreed order didn't transfer title. It just required him to turn over the items. It never said, this equipment is now the property of Dr. Hadley. Dr. Hadley was still subject to his Article 9 rights. He would have to do what Article 9 requires him to do. And what Dr. Hadley wanted and tried to infer was, okay, I so do this practice. I am not going to comply with Article 9 of the Uniform Commercial Code. I just want to step back in and operate this practice as a going concern. Okay, so let me stop you there because let me ask you a beginning question here with regard to this agreed order. Do you acknowledge that stay relief was effective by operation of the agreed order? I agree, ma'am. Okay, paragraph 7 of that order says, immediately upon the effectiveness of stay relief and abandonment as provided in paragraph 1, title to the property shall vest in Hadley. And I don't think that that order, while it says what it says, does not supersede Article 9 of the Uniform Commercial Code. I think that somebody, we entered the order and I won't dispute that order, but I think Article 9 mandates a liquidation of the claim. That order is the law of this case. And Article 9 provides for the parties to waive the provisions of Article 9 of selling property and that paragraph I just read to you says, the vesting shall cause the obligation of the debtor to Hadley to be partially satisfied in the amount of $188,000. So did that order not, in its vesting, identify the value that would be credited towards the debt? And the court declared that the full amount was non-dischargeable, although many items, as shown in the affidavits, were returned. Where did the court declare that the full amount of the debt was non-dischargeable? Isn't the damages tied to the specific equipment and property that was taken? No, ma'am, because it wasn't itemized that particular way. It was their prayer for relief that they claimed was non-dischargeable. The Statement of Undisputed Material Facts, to which your client had an opportunity to respond, did it not have for each item a property of value? And is that not where the total of $160,000 came from? Yes, ma'am. But I contend that that's still not commercially reasonable under Article 9 of the Code. And you say that your client didn't waive Article 9 commercial reasonableness by entering into the agreed order. That is correct, your Honor. And then you get to the 523A2A. And the A2A is basically that the debtor, in this particular situation, made no false representations. And what were the representations? He delivered all the property that he had left. As a result of that, he had it. This was an ongoing dental practice. Things wear out. And Dr. Hadley could say, well, gee, it's not the same thing as delivering a broom-clean building. What is available is, I had a dental practice. It failed. We returned the assets that were remaining. There was no statement of ordinary wear and tear. That things have to be replaced. Dr. Hadley, in his position, claimed that all of the... He wanted the original assets were returned as sold. But three years in technology, things change. Where in the record did Dr. Hadley assert that he wanted the original property in its original circumstance to be returned? That was done throughout the plea, your Honor. That was done in the situation that, by the claim that it wasn't returned, that the allegations that specific... An example would be certain dental equipment was not returned. But it may have been replaced. But it wasn't the original dental equipment that was done. That was alleged throughout the pleadings. Therefore, if you replace an item the way, taking Dr. Hadley's position, you couldn't update, replace, or do anything. Equipment breaks. And sometimes it's replaced. And our position in that is that Dr. Harrison might very well have replaced those items. And he was not given credit for those items when he replaced a particular... Like a laser stub. Where's that in the record? That record was in the record, your Honor, by the allegations in the complaint that items as stated in the original contract were not returned. And if they're in the contract and not returned, then that is the allegation. Because he did return a significant number of the items. Do we review the complaint or do we review the statement of undisputed material facts? You review the statement of undisputed material facts. Where in there is there any issue raised by Dr. Hadley with regard to the condition of the equipment as opposed to the lack of existence or the lack of the equipment being left where it was ordered to be left? And I submit, your Honor, that that was done in the areas where they claimed the equipment that was taken. Does not say that he's going with the original equipment in there. And did Dr. Harrison respond to the dollar values placed on the equipment from which the judgment was derived? Did he respond to that with anything about values? No, ma'am. My time is now up. Thank you, Mr. Lefkowitz. Thank you. Good morning. May it please the Court. With the Court's permission, I'd like to remove my mask. Thank you. Austin McMullen on behalf of Thomas F. Hadley, DDS, PLLC, the appellee in this case. Based on the undisputed facts in the case, the Bankruptcy Court entered summary judgment on behalf of Dr. Hadley's practice in the amount of $167,621.50. And we're here today to ask that the Court affirm that decision by the Bankruptcy Court. In the statement of facts that Dr. Hadley presented to the Bankruptcy Court, many, many facts were alleged and each of those was supported by citations to the record to admissible proof. Dr. Harrison's response to that did not meet the burden of his obligation in responding to a summary judgment motion. And so there is no genuine dispute as to any of those facts. These aren't just allegations, as counsel for the appellant has asserted this morning. These are statements of fact that were supported by citations to the record and admissible evidence, which was Dr. Hadley's obligation in filing a summary judgment motion. Dr. Harrison, however, did not meet his obligation in responding to that, both as outlined by the Supreme Court decisions, the Sixth Circuit decisions, and the local rule of the Bankruptcy Court, which requires that Dr. Harrison, as the non-moving party, either admit that a fact is undisputed or demonstrate that it is disputed. Instead, Dr. Harrison's response primarily was just blanket denials, often followed by a statement that he lacks sufficient information to form a response. And that may be okay if you're responding under Rule 36 to a request for admission, but in response to a statement of undisputed material facts as part of a summary judgment motion, the cases say that you have to go further and actually establish that there is a genuine issue that needs to be tried here. And so the argument that's being presented by the appellant here really would take us to a new place where we've never gone before, which is to say that you just can't get summary judgment on an issue of intent. And I don't believe that's true. The cases, including the Berge case that counsel for the appellant referred to this morning, says that a debtor need not actually admit his intent. Intent may be inferred from the circumstances of the injury. And this is a point that the bankruptcy judge in this particular case noted in his opinion when he said, it is the rare defendant who takes the stand and admits an intent that would preclude discharge. So you almost always have to infer the intent of a party from the facts that are presented to you when you sit as a judge. And this case really is no different. There were a hundred and some odd facts that we presented to the bankruptcy court, all of which were admitted. And the bankruptcy court went through in detail and described how the bankruptcy court was inferring Dr. Harrison's intent from all of those facts. And so we believe that those facts establish non-discharge ability either under A-6, A-4, or A-2. We only need to be successful on one of them. And so I think we've started with A-6 and A-4, but I think it could be justified under any of those. And those facts establish... Looking at A-2, what's the false misrepresentation, false statement misrepresentation that could be inferred under the facts as they were set out? Sure. Under A-2, I think there are several elements of falsity in what Dr. Harrison did. One of those was that he ordered his employees to remove working dental equipment from the Pleasant View Clinic and to take it to other clinics and to bring back non-working equipment from those other clinics to the Pleasant View Clinic and to be left for Dr. Hadley there. And so I believe that that is a demonstration of falsity or fraud in taking a working piece of equipment and replacing it with a non-working piece of equipment that looks just like it. Counsel for the debtor said that he was essentially couldn't be charged with larceny or attributed with larceny going back to A-4, but he was taking from himself and he could not steal from himself. Could you address that? Sure. I'm happy to do so. First of all, we have the agreed order. And it establishes that title to this equipment was in Dr. Hadley or Dr. Hadley's practice at the time that Dr. Harrison took it. And so that argument really doesn't have any factual support in this case. In this case, the order established that the title to the property was in Dr. Hadley. So this isn't a situation of a debtor that stole from himself. There also are cases that say that conversion of collateral can also be a basis for non-dischargeability. And so even if that order wasn't there in this case, which it was there, but you can rely on the line of cases that talk about conversion of collateral as well as a basis for embezzlement or larceny under A-4. Judge Balknight, you had asked about the falsity under A-2. And I think the replacing working equipment with non-working equipment is one element of that. There are a couple of others that we addressed in our brief, including the false testimony that was presented to the bankruptcy court just a couple of days after all of this equipment had been removed. We have all the testimony from the dental assistants who worked for Dr. Harrison. They were ordered to come in over the weekend and remove all of this equipment. The following Tuesday, we had a hearing in bankruptcy court. And at that time, we didn't know what had been removed. We weren't privy to that information yet. But at that time, I asked Dr. Harrison on the stand what had been removed. And he said that none of the collateral had been removed. That, we now know, was a completely false statement under oath to the court and to Dr. Hadley, who was sitting in the courtroom who was trying to find out, would he be able to get back his dental clinic? And then we have the agreed order in which Dr. Harrison agreed that he would turn over this equipment. And then just a couple of weeks later, he's removing all the equipment and taking it to his other practices. So I feel like A-2 is certainly an argument that's a valid argument for non-dischargeability in this case. We also have A-6 and A-4, which I think are very strong arguments as well. And we believe that the judgment of the bankruptcy court could and should be affirmed under any one of those basis. I'm happy to address any other questions that the court may have. But I don't want to belabor the point or waste the court's time as well. All right. Thank you very much. Okay. Thank you, Your Honor. To hear Mr. McMullen's statement, and he and I were talking all the way up, we weren't up together. And we'll go to lunch after this, which is the way camaraderie. I very much appreciate civility. Camaraderie. That's what I love about the bankruptcy court is the camaraderie between all of the attorneys who practice there. And I'm going to make a quote, and probably somebody, Judge Balton, you have the computer, so you'll fact-check me as soon as I say this. But it reminds me of a Shakespearean quote when I was just sitting there thinking about what was said. The engineer hoist by his own petard. That came from Hamlet Act 3, Scene 4. So I know somebody's going to fact-check me before this is over with. That is the allegation against Dr. Harrison. But the one point that Mr. McMullen failed to stress is that all these other equipment was taken to other dental practices. They were all before the bankruptcy court. All of the dental practices that were related to this were all in bankruptcy. So if it went to Clinic X or Clinic Y, that could be recovered. So if they say that Dr. Harrison took this equipment to X clinic, that was also before the bankruptcy court. Why does that matter? Because it matters, and I'll tell you why I think that matters. Because if it was wrong and they knew back then that maybe if they didn't get their equipment back, they had a place where they could have gone and gotten it. Were these cases substantively consolidated? I believe they were administratively consolidated, Your Honor. I keep going back to the statement of opposition that the debtor, where he admitted he told the employees to, quote, back up and move everything that was not attached to the floor or the wall. And that's a truthful statement, Your Honor. He did tell them that. But I don't think that in and of itself is a basis to grant non-dischargeability on non-evidentiary proof where he's allowed to testify. And I do submit that I think intent at least cannot be argued on summary judgment. And that's my position on this. And intent be inferred? It shouldn't be. Can it be? In extreme situations, yes, Your Honor. Thank you, Mr. Lefkowitz.  Thank you both for your arguments. The case will be submitted. This honorable court now stands adjourned.